NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
                                    :
ANTHONY TUOZZO,                     :
                                    :  Civil Action No. 13-4897 (RMB)
            Petitioner,             :
                                    :
        v.                          :         **OPINION**
                                    :
JOHN T. SHARTLE,                    :
                                    :
            Respondent.             :
_____:

This matter comes before the Court upon Petitioner's § 2241 petition ("Petition"), which arrived accompanied by his filing fee. See Docket Entry No. 1. Petitioner is a federal inmate currently confined at FCI Fairton, New Jersey. See generally, Docket. His imprisonment resulted from a conviction and sentence rendered by the United States District Court for the Eastern District of New York ("EDNY"). See USA v. Pantolitano et al., Crim. Action No. 10-0068 (SJ) (E.D.N.Y.). Underlying that conviction was an armed robbery of a restaurant in New York. See id., Docket Entry No. 186, at 2. Petitioner was the driver of the get-away car, and the post-arrest search of his apartment produced a gun box (registered to a stolen gun), two magazines (for two different firearms) and rounds of other ammunition, as well as controlled substances and relevant paraphernalia. See id. He pled guilty to a Hobbs Act robbery, see id., and was sentenced to fifty-one months. See id., Docket Entry No. 191.

Prior to that conviction, Petitioner had a 2005 conviction for an unlawful possession of a controlled substance, a 2007 conviction for a criminal possession of a loaded firearm, a 2009 conviction for a criminal possession of a weapon, and six other arrests (for offenses such as sale of controlled substances, use of a driver's license belonging to another individual, possession of a falsified driver's licence, etc.) that entailed, inter alia, a recovery of crack cocaine, a bench warrant for Petitioner's failure to appear in court, etc. See id., Docket Entry No. 186, at 5. His sentencing memorandum asserted that his biological father, who never married his mother, was a "heroin addict" and "left the family shortly after" Petitioner's birth. Id., Docket Entry No. 183, at 6. Petitioner also asserted that, since his early youth, his mother has had an "HIV infection" and his step-father has been "an alcoholic." Id. Yet, Petitioner stated that he had "attended St. John's University studying business management" and has maintained a steady employ; he also produced a letter from his labor union informing the EDNY that, upon his release from custody, he was likely to "become an active member in the union" and practice his gainful craft. Id. at 7-8.

In his Petition at bar, Petitioner challenged a finding made by his prison Unit Team that he should be placed in a community correctional center ("CCC") for the period of 150 to 180 days preceding his release. See generally, Instant Matter, Docket

Entry No. 1. In support of that position, he claimed he needed a longer CCC period in light of his concerns about "the declining health of his parents," his "family business" and his "property and home." Id. at 5.[1] He also alleged that his administrative exhaustion efforts were underway at the time when he filed his Petition; from that fact, he somehow deduced that waiting for completion of the administrative process would be "futile." Id. at 4-5.[2] In terms of substantive law, he made a few statements implicating the Second Chance Act of 2007, Pub. L. No. 110-199, Title II, § 251, 122 Stat. 657, 692 ("Second Chance Act,"

---

[1] This Court is not entirely clear as to how Petitioner's statements made in his sentencing memorandum filed in USA v. Pantolitano et al., Crim. Action No. 10-0068, could be reconciled with his statements in the Petition at bar, since his sentencing memorandum made it abundantly clear that Petitioner had no business but reason to believe that he would be employed practicing his craft under the auspices of his labor union. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1331 (3d Cir. 2002) (judicial notice can be taken with respect to documents filed by the parties); see also Jackson v. Broad. Music, Inc., 2006 U.S. Dist. LEXIS 3960, at *18 (S.D.N.Y. Jan. 31, 2006) ("the court may take judicial notice of . . . of 'admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action'") (quoting Harris v. New York State Dep't of Health, 202 F. Supp. 2d 143, 173 (S.D.N.Y. 2002), and citing Munno v. Town of Orangetown, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005)).

[2] Petitioner's procedural position is erroneous. The fact that Petitioner's administrative exhaustion efforts are still underway cannot render the process "futile." However, since this Court cannot rule out the possibility that Petitioner's administrative exhaustion efforts have been completed during the pendency of this matter, the Court finds it unwarranted to dismiss the Petition as unexhausted, without reaching its merits.

codified at 18 U.S.C. §§ 3621 et. seq.) but avoided citing or even referring to the Act by its title; instead, he asked this Court to increase his CCC period by "compassionate release."  Id. at 5 (citing 18 U.S.C. §§ 3582(c) and 4205(g)).[3]

No matter how the Court were to construe the Petition, it warrants no relief.[4]  If this Court were to read into it the Second Chance Act, Petitioner's claims would have to be dismissed for failure to show a violation of his federal rights.

---

[3]  The rationale of Petitioner's reliance on 18 U.S.C. § 4205(g) is not immediately apparent to this Court since Section 4205(g) was repealed by the Act of October 12, 1984, Pub. L. 98-473, Title II, Ch. II, § 218(a)(5), 98 Stat. 2027 (effective on the first day of the first calendar month beginning 36 months after enactment, i.e., long before Petitioner's underlying conviction took place).

[4]  After filing his Petition, Petitioner also submitted a letter asserting that he was retaliated against by his prison officials for his commencement of the case at bar, and that retaliation caused his placement in a special housing unit and loss of certain prison privileges.  See Docket Entry No. 2.  These challenges, injected in this matter mid-litigation, cannot warrant relief in *this* action.  While some of these claims might be viable, the claims based on a retaliation or unduly prolonged special-housing-unit confinement can be raised only in a civil suit under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), upon Petitioner's prepayment of the applicable $350 filing fee (or obtaining in forma pauperis status).  See Sanchez v. Laughlin, 2013 U.S. Dist. LEXIS 116225 (S.D. Miss. June 28, 2013) (citing Spencer v. Bragg, 310 F. App'x 678, 679 (5th Cir. 2009), for the observation that a retaliation claim should be raised in a Bivens action, not a § 2241 matter).  Moreover, claims based on loss of privileges are not cognizable even in Bivens review.  See Pelzer v. Shea, 470 F. App'x 62 (3d Cir. 2012); see also Landor v. Lamartiniere, 515 F. App'x 257, 259 (5th Cir. 2013); Grady v. Garcia, 506 F. App'x 812, 814-15 (10th Cir. 2013).

4

Section 3624 extended the maximum amount of time that the BOP may place an inmate in a CCC from 180 days to twelve months. See 18 U.S.C. § 3624(c)(1). Courts have consistently held that the Second Chance Act does not guarantee a one-year placement, but "only directs the Bureau of Prisons to consider placing an inmate in a [CCC] for up to the final twelve months of his or her sentence." Lovett v. Hogsten, 2009 U.S. App. LEXIS 28957 (6th Cir. Dec. 29, 2009); see also Nelson v. Zickefoose, 2013 U.S. Dist. LEXIS 3757 (D.N.J. Jan. 9, 2013) (same); Travers v. Federal Bureau of Prisons, 2009 U.S. Dist. LEXIS 110901 (D.N.J. Nov. 30, 2009)("nothing in the Second Chance Act entitles Petitioner to a [CCC] placement longer than the 120-150 days [or an analogous less-than-a-year period]"). Essentially, when assessing an inmate for a CCC recommendation, his Unit Team is obligated: (a) to reflect on the resources of the placement facility, the resources available to the inmate, the nature and circumstances of the inmate's offense, his history and characteristics, and any pertinent policy statement issued by the United States Sentencing Commission; and (b) to exercise its independent discretion in reaching its determination without abusing the agency's mandate. See 18 U.S.C. § 3621(b).

This Court has no basis to presume that Petitioner's Unit Team failed to consider these factors or abused its discretion. Petitioner's sentencing memorandum demonstrates that he has work

experience, extensive skills in his craft and every reason to expect employment either right upon or shortly after his release. In addition, there is no basis to presume that his ability to maintain a place of abode would be affected by his placement in a CCC for a few extra months.  Moreover, the offense underlying his current term was serious, and his criminal history warrants great caution, while his drug abuse treatment administered at Fairton appears beneficial to him.  Finally, even though his concern with the health of his mother and step-father is understandable, the record is clear that the deterioration of their health began decades before his current incarceration and it cannot be aided by his placement in a CCC for a few extra months.

Alternatively, if this Court were to focus on the legal basis asserted in the Petition, i.e., on Petitioner's reference to "compassionate release," the Petition would fare even worse. Section § 3582(c)(1) provides that, *upon motion of the BOP Director with the sentencing court*, which includes a showing of extraordinary and compelling reasons, a federal prisoner may be granted the so-called "compassionate release."[5]  It follows that even the sentencing court would lack the authority to review or reverse a BOP decision not to seek "compassionate release."  See

---

[5] Since such motion, if granted, does not necessarily impact the duration of an inmate's confinement, it cannot be sought in a habeas matter.  See Quaco v. Ebbert, 2012 U.S. Dist. LEXIS 63774 (M.D. Pa. May 7, 2012).

Quaco, 2012 U.S. Dist. LEXIS 63774; see also Crowe v. United States, 430 F. App'x 484, 485 (6th Cir. 2011). A fortiori, no "compassionate release" could be granted here, since: (a) there has been no motion by the BOP Director; and (b) this Court is not Petitioner's sentencing court. Thus, Petitioner's "compassionate release" claims should be dismissed for lack of jurisdiction.[6]

For the foregoing reasons, the Petition will be dismissed for failure to show a violation of Petitioner's rights or for lack of jurisdiction. An appropriate Order follows.

                                                s/Renée Marie Bumb
                                                **RENÉE MARIE BUMB**
                                                **United States District Judge**

Dated: February 27, 2014

---

[6] Moreover, Petitioner's "compassionate release" application cannot be based on his concerns with the health of his parents, it can only be based on his own health. If an inmate has such detriments, he must begin the process with a request to the warden of the institution to which she is confined. If the warden determines that a compassionate release is warranted, the warden's recommendation will be reviewed by the BOP's General Counsel, who, if he or she agrees, will seek the opinion of the Medical Director (if the request is medical in nature) or the Assistant Director, Correctional Programs Division (if the basis is non-medical). Final review, of course, is committed to the discretion of the Director. If the Director of the BOP favors the request, he or she contacts the United States Attorney in the district in which the inmate was sentenced and asks that a motion be filed in the sentencing court seeking a reduction of the inmate's sentence to "time served." 28 C.F.R. § 571.62(a)(1)-(3).